Case No. 18-51A, Gary L. Jackson, Appellant, v. Thomas B. Modly, Secretary, The United States Department of the Navy Mr. Shelley for the amicus curiae, Ms. Lyons for the appellate Mr. Shelley, good morning. Good morning, and may it please the Court. I'm Anthony Shelley, the amicus appointed on behalf of the appellant, and I've reserved two minutes for rebuttal. When the Court appointed me as the amicus, it specifically asked that I address whether Title VII's prescriptions against racial discrimination, gender discrimination, and other discrimination apply to the uniformed military, so I will focus on that issue. For many years, courts in other circuits have failed to apply Title VII as written. They've excluded the uniformed military from a statute readily read to include them. How long have the other circuits been holding that this does not apply to the military? The first decision was in 1978 by the Eighth Circuit. The last is around 2003, I believe it was the fifth. In 1978, there have been these decisions piling up, going that way. Have any of them gone to the Supreme Court on cert? I believe the first one did. I believe Johnson did, and cert was denied. The Supreme Court's never accepted the issue. Has Congress taken any action to respond to the unanimous Court's direction on that? It has not, but it has settled on its own statutory language that was in the original statute, which was that... Couldn't we presume that Congress is aware of decisions in screwing its language? Well, I think we should be... We have cases that affect Supreme Court decisions. Couldn't that also apply to circuit decisions? Well, I think Congress is aware of the language it put in the statute. It's aware of circuit decisions. It's aware of Supreme Court decisions. But the Supreme Court has never decided this issue, and not every circuit has decided the issue. And frankly, this Court's decisions actually, given the other circuits' decisions, this Court's decisions actually point the other way. And there's no direct precedent on point within this circuit, and the two precedents that we've cited repeatedly, Spirides on the definition of employee and Judge Henderson's majority opinion in Cummings, both point in the direction of the military being covered by a statute like this. So I certainly understand and concede that the other circuits to have addressed this have gone the opposite direction. But this circuit hasn't addressed it. The Supreme Court hasn't addressed it. And the two precedents that are closest to this issue in this circuit go in our direction. And so we would ask the Court to... Let me say this. You caused me to pull down Cummings and look at it again. And all we held there, and I'm reading from it, we hold that the Doctrine of Ferries does not extend to the Privacy Act lawsuits. That's our actual holding. So I don't know how you go from that to Title VII. Because the Court, before it got to Ferries, it had to first analyze the plain language of the Privacy Act. And the Privacy Act used the term military department. And all these other decisions that Judge Sentel mentioned already actually focus on what does military department mean. And in the first part of the decision in Cummings, the Court said military department includes the uniform military. And in all of these other circuit decisions from the other circuits, they say military department includes only the civilians, which is a real misreading of the statute. But the Privacy Act talked about agencies, and that's what broadened, or one reason it broadened out the availability of Privacy Act claims brought by uniform members of the military. Well, this statute talks about employees of an employer, and then the employers are described as those, anyone engaged in commerce. And then in the statute, commerce is defined as any governmental activity. And when the statute in the definition of employees specifically accepts persons, it only accepts one type of person, and that is elected officials. It's odd, though. I didn't see it in your brief, and I didn't see it even in the government's brief. But employees under Title V, which do include the listing of the military departments, 5 U.S.C. 102. But in 5 U.S.C. 2105, 2101, there's a discussion of the definition of employee. For purposes of this title, which would cover this military departments, an employee is someone appointed in the civil service. And the civil service consists of all, this is 5 U.S.C. 2101, sub 1. Civil service consists of all appointed positions except positions in the uniformed services. So the fact that employees, civil service employees, are defined in the same title to accept positions in the uniformed services, why isn't that what the government should rely on, what we should rely on, and how do you respond to that? I think Spirides, the 1979 decision interpreting the term employee specifically forecloses it. It says we're not to look to Title V for the definition of employee because that's too narrow. Congress didn't invoke that definition and instead invoked broader language and just simply said employee. And in Spirides, in fact, it says if there's a tie, if it's a close call, it goes to the employee because it's a remedial statute of which Congress wanted broad interpretation. So I don't think the court could look to Title V as the guide consistent with Spirides. In addition, Congress regularly has used the term employee in a number of statutes, the Fair Labor Standards Act, the Civil Service Reform Act, the anti-slayer statute we mentioned in our briefs. And in each instance, it uses the term employee broadly. And then if it wants to limit the statute to only civilian employees in the military, it specifically says so. And in fact, President Johnson's executive order right before enactment of the amendments to Title VII that covered the government specifically said it shall only cover civilian employees. That was the executive order. When Congress had that in front of it, it didn't use that same terminology. In fact, every time in the government's brief when they mention employee, they always say it was intended to cover civilian employees. They have to put that moniker in front of it because employee is a broad term. And under just practical standards, the military are employed by the government. They receive wages. They receive benefits. They pay taxes, like wage taxes like everyone else. They're recruited on campuses like other employers recruit employees. So as a practical matter, as a practical matter. They're locked into a very different system than anybody who is an employee in the civilian sense. That's true. They go in for two years if they're enlisted men, or excuse me, four years generally if they're enlisted personnel. Or they're under a commission if they're an officer. It's a different kind of a contractual relationship, I guess, for military than it is for civilian. I entirely agree in that sense, but that only helps prove employment status under a decision like Spirides. Because Spirides says what you look to is the extent to which the superior can control the work and obligations of the inferior. And in that situation, what Judge Santelli just described, is the fact that the military personnel subject themselves to even greater control by the superior. Right. It's different. It's different. You admit then it is not the same as other employers, right? I admit there are elements. Of course, I admit that there are elements that are different. But I would say they only push more in the direction that agency law would say constitutes a master-servant relationship, which is what the employer-employee relationship is based on. But that's a different question, that the contractor versus employee is sort of a, as you say, cross-cutting, informed by the common law. But here we're talking about employees, a statutory definition that carves out uniformed services. It doesn't. And so I'm not sure that Spirides... It doesn't carve them out. The statutory definition of employee comes in the definition section of Title VII. In the definition section, it says, any individual employed by an employer. An employer is then defined as any entity engaged in commerce. And then commerce is defined as governmental activity. But specifically in the definition of employee, it says any individual employed by an employer except elected officials. It has one exception, elected officials. Congress clearly could have said, and the military. And, in fact, in all these other statutes I mentioned, Fair Labor Standards Act, Federal Tort Claims Act, all these statutes, the court, when Congress did not want the term employee to include uniformed military, it said so. It used only the broad term here and included only one exception for elected officials. It could have easily said, but not the military. You're saying they accepted the military, or they said we were talking only about civil service? I just can't remember. Fair Labor Standards Act. So Title VII only says employees, except for those elected. And the other ones you were contrasting say... Fair Labor Standards Act, the Civil Service Reform Act. They say this covers employees, except it only covers civilian employees. They will say it covers civilian employees. So showing that Congress understands the term employee in its broadest sense, like Spirides says, unless they say it doesn't. I see my time is up. Actually, I'll ask the government. It's a better question for them. We'll give you some time. Thank you. Ms. Lyons. Good morning. May it please the Court. Title VII covers employees and applicants for employment in the military branches, but as the Court has been discussing this morning, employment is separate and distinct from military service. I have a number of responses to the arguments that have been put forth here this morning. In terms of Spirides, Judge Pillard, I feel like you were with me last night at midnight when I made those links that you laid out this morning with 2105. Spirides is decided by this Court in 1979, and obviously that's well before the extensive amendments to the statute in 1991 that extended the provisions that we're really looking at today to the federal government. And in those provisions, it is the definition of military departments that is incorporated into Title V. So I think the elegant, maybe the missing link from my brief, is 5 U.S. Code Section 2105, which defines an employee to be someone who is appointed to the civil service. That's just one of the requirements. So in that way, it's an elegant way to answer the question that the military, uniform military is not covered by Title VII. But beyond that, re-reading Spirides last night also brought to mind that couple of things, that the Court went beyond the definition from the civil service world in that case, in part because of a desire for a liberal interpretation of the statute and its remedial purposes. But that has to be weighed against the Supreme Court's decision in Chappell v. Wallace and this Court's decision in Boyce v. Marsh. In Chappell v. Wallace, the Supreme Court recognized the special status of the military requiring two parallel systems of justice in addressing complaints and grievances of discrimination by its civilian and uniformed military. Can you tell us about, it's interesting in your brief, I read your brief to be basically saying that the uniform military are covered by Title VII, but that the remedial and administrative scheme is different. I think, yeah, in re-reading it, it was less precise than I hoped. I think it might be possible to construe the statute as covering uniform military insofar as it prohibits unlawful discrimination on the basis of the statute. But there's no real need to reach that issue because the military, in particular a Marine Corps order, certainly sets forth those standards and many more for the military. Where? In a Marine Corps order. A Marine Corps order? Yes. So that was actually my question, was where are the substantive standards of anti-discrimination that the MEO applies? Do they advert to Title VII and Title VII doctrine when the military itself applies? The military tends to use its own standards and language. It incorporates the concept of unlawful discrimination. And those standards are set forward, you said, in a brief? Marine Corps order 5354.1E, as in Edgar. And that's not in your brief? That's not in my brief, no. I found that as part of my preparation for oral argument. Your Honor, I apologize. Getting back to Chappell v. Wallace and Boyce v. Marsh, both those cases recognize the need in the context of construing statutes as applied to the military to have some hesitation and also recognizing that the Congress and the military have existing systems for review and remedy of these types of grievances and complaints. They are robust. They include criminal penalties. It's a very different world that soldiers live in. So just to answer my question from your brief on page 13 in your summary of argument, you say Title VII precludes military departments, including the Navy, from engaging in acts of employment discrimination, but Title VII and its implementing regulations prevent litigation of the claims presented, in this case, in a civilian court. So I'm misreading that if I think that what you're saying is Title VII substantive standards apply, but the remedial and administrative mechanisms are different. That's not your position. That's correct. To the extent it could be read that way, I apologize. Okay. That being said, I am in no way, shape, or form denying here this morning that the military indulges any type of unlawful discrimination. Right. I mean, it's prohibited. Absolutely. It's just prohibited under a different source of law. Yes. I mean, for example, the military was desegregated by act of an executive order, and President Harry Truman did that in the 50s before Title VII even existed. So if we were to not rely on Ferris, Chappell, but just the statute, I mean, one of the curious things is the doctrine in this area seems somewhat under-explanatory. I mean, the statute says military departments, and as opposing counsel pointed out, very easily could have said only civilian employees of military departments. It doesn't say that. In fact, elsewhere the military departments are defined to include forces. So we don't even, I mean, in a nutshell, your statutory language argument is that the statute does not contain a clear waiver of sovereign immunity for claims brought by uniformed service members. And to the extent you look at that and interpret the language that is there about employment, employment has never been recognized to be equivalent to military service. And I trace that to Chappell v. Wallace and Boyce v. Marsh and, you know, long lines of precedent. Isn't that a very broad way of defining it to say military service is not employment? And I'm just worried about, well, I guess that's what Title V says. Are there not other employment statutes that do apply to the military? Not really. And actually that's what the tenor of the argument this morning made me think about is that, for example, are we going to have unions in the military if we define employment to be an available option? I mean, that argument seems to have virtually no limit. I mean, military service members complete missions. They don't clock out at 5 o'clock or start looking for overtime pay. And they have specified employment benefits and health benefits and so on. It's an entirely different relationship, Your Honor. Fair labor standards exclude military by express language. I think you're correct, Judge Sintel. Some of the statutes expressly do, but I wonder if every single one of them does. I haven't checked, and I won't speculate. The district court referred to 12b-1, but it sounds like, at least under ARBA versus YNH, just reading the statute not to reach these employees, this would be a 12b-6. I think that may be correct, Your Honor. I think the claim fails for a cause of action, not for lack of jurisdiction. If there are no further questions, I respectfully ask that the judgment be affirmed. All right. Thank you. Why don't you take two minutes? Thank you, Your Honor. I'll just make a couple of points. One is that Spirides is 1979, and the amendments we're talking about that included federal employment within Title VII came in 1972. So Spirides clearly was dealing with the definition that exists in the statute currently. Second, the Chappelle case is actually, we think, helpful to our side, because what it says is that judges can't create causes of action or liability. It's Congress's obligation to do so, and you look to the plain language of the statute to see so, and the court specifically said there are APA actions that can be brought against the military involving things like racial discrimination to challenge correction board decisions, and if their argument, if the government's argument were correct, that civilian courts can never get involved in these types of issues involving subordinates and inferiors in the military, in that situation, then even the APA would be trumped by a doctrine like Ferris, which Chappelle specifically says is not the case. And the last thing I'd point out is that the statute applies not just to employees, but to applicants for employment. So if someone goes into a recruiting office of the Marines and attempts to join the Marines and is denied admission because of racial discrimination, they have no remedy anywhere, seemingly. Under the auspices of employee or service members who are already accepted, that's not applicable to those who simply walk in the door, and again, the tie in a situation where the government admits the statute may even be ambiguous, the tie should go to Mr. Jackson because the statute should be interpreted liberally. So we'd ask that the district court be reversed. All right. Mr. Shelley, we appointed you to represent Mr. Jackson, and you've done a superb job. So thank you. Thank you so much. Indeed.
judges: Henderson, Pillard, Sentelle